20 N.J. Super. 11 (1952)
89 A.2d 84
SADYE GORDETSKY, PLAINTIFF-RESPONDENT,
v.
WILLIAM COHEN, AND OTHERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1952.
Decided May 19, 1952.
*12 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Joseph W. Jantausch argued the cause for the respondent (Mr. Milton C. Yarrow, attorney).
Mr. Jack L. Cohen argued the cause for the appellants.
The opinion of the court was delivered by BIGELOW, J.A.D.
This action is governed, and affirmance of the judgment required, by Tappin's Jewelry Stores v. Rosner, 111 N.J.L. 301 (E. & A. 1933). There the plaintiff had made a conditional sale of a diamond ring and the buyer had pawned the ring. Then when the plaintiff brought its action to recover possession of the ring, the defendant pawnbroker asserted that L. 1931, c. 294, gave him a lien superior to that of the true owner. Our highest court held the contrary, saying that the pledgor "lacked title to the ring and the pledgee's right could rise no higher than the source." That case was closely parallel to the one now before us.
The plaintiff-respondent is the owner of jewelry which her husband wrongfully and without her knowledge and consent, pledged with the defendant-appellants who are pawnbrokers. She sued in replevin and obtained judgment for possession and, in the alternative, for the conceded value of the jewelry. The appellants pleaded in defense that the pawn ticket had not been surrendered to them, or been impounded, or its negotiation enjoined as required by R.S. 45:22-29, a section derived from L. 1931, c. 294, cited in the Tappin case. The trial court held that the statutory *13 provision on which appellants relied did not apply to an action by the true owner of chattels which had been wrongfully pledged by a third person, but only to an action prosecuted by the pawner or some one claiming under him.
Even aside from the Tappin Jewelry Stores precedent, we are satisfied that the judgment now under review was correct. R.S. 45:22-29, cited by appellants, like sections 17 and 33 of the same title and chapter, are designed to give pawn tickets a large measure of negotiability. While the statute should be construed in such wise as to accomplish that object, the statute should not be construed so as drastically to curtail fundamental rights unless the intention of the Legislature to do so is entirely clear. Schuratz v. King Realty, etc., Co., 93 N.J.L. 111 (Sup. Ct. 1919), affirmed 94 N.J.L. 134 (E. & A. 1920); Wilentz v. Crown Laundry Service, Inc., 116 N.J. Eq. 40 (Ch. 1934); In re Port Murray Dairy Co., 6 N.J. Super. 285, at 302 (App. Div. 1950). If appellants are correct, the true owner of property which has been pawned without his consent, by some one acting tortiously or even criminally, is deprived of his property unless he can find the wrongdoer, or rather the person presently holding the pawn ticket, and stop the further negotiation of the ticket. The section can be given ample effect by construing it to relieve the pawnbroker of a duty to surrender the chattel to the pledgor, or to one who derives his claim from him, unless he produces the ticket or else safeguards the pawnbroker as prescribed by the statute.
Compare the Uniform Bills of Lading Act, and the Uniform Warehouse Receipts Act. These statutes, dealing with instruments of well recognized negotiability, enable the carrier or the warehousemen to maintain interpleader against all claimants, including one who asserts a title adverse to the bailee, R.S. 48:20-24 and 57:1-20, while the pawnbroker can require to interplead only those claimants who recognize his lien, R.S. 45:22-30. On the other hand, the carefully drawn uniform acts fully preserve the title of the adverse claimant, although giving the bailee a reasonable time to ascertain the *14 validity of his claim, R.S. 48:20-25 and 57:1-21. No public policy is apparent for giving a pawnbroker a more advantageous position than a carrier or a warehouseman in respect to an adverse claimant.
The judgment is affirmed.